UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

J.P. MORGAN SECURITIES LLC

v.

ANGELIQUE G. MANNE

CIVIL ACTION

NO. 16-818-JWD-RLB

## TEMPORARY RESTRAINING ORDER

This matter comes before the Court on the motion of Plaintiff J.P. Morgan Securities LLC ("Plaintiff" or "JPMorgan") for a temporary restraining order and for expedited discovery. (Doc. 2.) The motion is opposed. (Doc. 7.) Having carefully considered the briefs, their accompanying declarations, the law, and the oral argument by counsel for the parties, the Court finds that the motion, Doc. 2, should be **GRANTED** for the reasons stated by the Court on the record.

The Court finds:

1. While employed by JPMorgan, Defendant Angelique G. Manne ("Manne" or "Defendant") executed an agreement that contained restrictions on her ability to use JPMorgan's records and to solicit JPMorgan's clients and employees after terminating her affiliation with JPMorgan;

2. JPMorgan's agreements with Defendants, the duty of loyalty, and the rights of JPMorgan with respect to its confidential and proprietary business and client information and records are being and will continue to be violated by Defendant unless enjoined by this Court.

Specifically, prior to the hearing, JPMorgan submitted the declaration of Steven E. Morgan, an Executive Director at JPMorgan with authority over JPMorgan's Private Bank in the Baton Rouge Market, essentially asserting that Manne breached her agreements and began

poaching clients.  According to Morgan:

- "Upon joining Morgan Stanley, Manne has been contacting and soliciting JPMorgan clients via phone calls, including to clients' cell phones, emails, text messages and in person meetings. JPMorgan employees have spoken with a significant number of the JPMorgan clients whom Manne formerly serviced, a substantial number of whom informed us that Manne has contacted them about doing business at Morgan Stanley. The clients have informed us that Manne's communications have been more than simply announcing her change of employment, and that she is instead actively seeking to induce them to do business with her at Morgan Stanley." (Doc. 2-4 at 17.)

- One client stated that he got "numerous unwanted text messages" from Defendant about her move to Morgan Stanley and "doing business at Morgan Stanley." (*Id.*) That "client described the barrage of communications as 'harassment.' " (*Id.*)

- Another client told JPMorgan that Defendant called him on his cell phone "seeking to discuss doing business with her at Morgan Stanley." (*Id.*)  That client had concerns about the fact she had his cell phone and "questioned what other of his information Manne took with her upon departure." (*Id.*)  This client also received from Defendant a photograph of her and two other former JPMorgan employees who left with Defendant to join Morgan Stanley. (*Id.*)

- Morgan states that "multiple JPMorgan clients have informed JPMorgan that they received either an email or text message from Manne with a photograph of her with the two other former JPMorgan employees." (*Id.*)

- According to Morgan's supplemental declaration: "on December 7, 2016, I personally spoke with a JPMorgan client who Manne serviced during her JPMorgan employment. During that call, the JPMorgan client informed me that during a meeting with Manne on or about October 27, 2016, Manne told the client that she would be leaving JPMorgan and joining Morgan Stanley. Manne did not resign from JPMorgan until November 10, 2016. Thus, Manne told the client of her intended resignation from JPMorgan to join a competitor firm two weeks prior her actual resignation." (Doc. 20 at 3.)

Defendant submits her own declarations denying these claims (Docs. 7-1 & 22-2).  Though a close call, the Court finds that, at this stage, the Plaintiff has carried its burden of proving a substantial likelihood of success on the merits for a breach of contract claim.

In making this finding, the Court rejects Defendant's argument that Plaintiff's evidence is inadequate. An affidavit submitted in support of a TRO "must be made on personal knowledge

2

and meet the other standards applicable to affidavits supporting an application for a preliminary injunction under Rule 65(a)." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2952 (3d ed. 2016). "Affidavits are appropriate on a preliminary-injunction motion." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2949 (3d ed. 2016). "Preliminary injunctions frequently are denied if the affidavits are too vague or conclusory to demonstrate a clear right to relief under Rule 65." *Id.*   Most importantly, Wright and Miller advises that "in practice affidavits usually are accepted on a preliminary injunction motion without regard to the strict standards of Rule 56(c)(4), and . . . hearsay evidence also may be considered." *Id.*

The Fifth Circuit follows Wright & Miller.  In *Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987), the Fifth Circuit rejected the defendant's argument that the trial court erred in relying on "affidavits that contained hearsay" when ordering a preliminary injunction.  The Fifth Circuit explained:

> First, we note that a preliminary injunction proceeding is not subject to jury trial procedures:
>
>> [A] preliminary injunction is customarily granted on the basis of procedures that are less formal and on evidence that is less complete than a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing.
>
> *University of Texas v. Comenisch,* 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).
>
> An additional reason for some leniency in the preliminary injunction stage is that it is used when quick action is necessary to prevent irreparable harm. A leading commentator explains:
>
>> [I]nasmuch as the grant of preliminary injunction is discretionary, the trial court should be allowed to give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be held....

11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2949 at 471.

The First Circuit in *Asseo v. Pan American Grain Co., Inc.,* 805 F.2d 23 (1986) recognized the propriety of hearsay evidence in preliminary injunctive proceedings:

> **Affidavits and other hearsay materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding.**

*Id.,* at 26 (citations omitted).

*Id.* (emphasis added).  Based on Wright & Miller, *Dixon*, and Morgan's declarations, this Court finds that the Plaintiff satisfies the evidentiary burden at this time.

But even assuming that the declarations were not enough, the testimony provided at the hearing of this matter confirms the above finding.  The Court listened to Ms. Manne and Mr. Morgan testify and observed their demeanor.  The Court simply finds Ms. Manne's testimony unbelievable.  This includes but is not limited to:

(a) her claim that she went to quarterly reviews with clients in Shreveport and Monroe the day before she left JPMorgan and yet did not attempt to solicit their business;

(b) her claim that she either had all of the client numbers on her cell phone or obtained them through researching websites; this is directly contradicted by the email Defendant sent to her secretary the day before she left in which Defendant asked for the contact information for fourteen clients, purportedly to discuss the presidential election; and

(c) her initial claim that her customers did not all come from JPMorgan and her later acknowledgement that they all did originate from JPMorgan entities.

Conversely, the Court found Mr. Morgan believable.  Morgan said he was told by a client that Ms. Manne "blew up" his or her[1] cell phone with unwanted and unsolicited text messages. The Court finds that is well beyond the Defendant's claim of merely providing contact

---

[1] The client's identity remained confidential at the hearing.

4

information and letting the client know of a change of firm.  This is solicitation in violation of the agreement.  Mr. Morgan was by no means perfect as a witness, but the Court found his demeanor and testimony more convincing than the Defendant's.

In sum, considering the declarations and the live testimony, the Court finds that the Plaintiff has proven a substantial likelihood of success on the merits of, at the very least, its breach of contract claim.

3. JPMorgan will suffer irreparable harm and loss if Defendant is permitted to solicit JPMorgan's clients and employees on behalf of Morgan Stanley Smith Barney LLC ("Morgan Stanley"), a direct competitor of JPMorgan, and to convert JPMorgan's confidential and proprietary information to her own use and that of Morgan Stanley.  *See J.P. Morgan Securities LLC v. Kenny*, No. 16-16071, slip op. at 2 (E.D. La. Nov. 7, 2016); *Charles Schwab & Co. v. Newton*, No. 16-236, 2016 WL 1752767 (M.D. La. May 2, 2016); *Am. Bldg. Prod., L.L.C. v. Ashley Aluminum, Inc.*, No. 97-2976, 1997 WL 610877, at *4 (E.D. La. Oct. 1, 1997).[2]  Morgan stated in his declaration that the losses would be difficult to quantify, and Defendant could not do so at the hearing.  Moreover, the complaint by JPMorgan's client concerning his cell phone being contacted reflects a loss of good will, which is also difficult to quantify.  Lastly, Morgan declared that Defendant poached clients, which is further irreparable harm.

4. JPMorgan has no adequate remedy at law;

5. Greater injury will be inflicted upon JPMorgan by the denial of temporary injunctive relief than would be inflicted upon Defendant by the granting of such relief.  Indeed,

---

[2] The parties do not address La. Rev. Stat. 23:921(H).  "[U]nder La. R.S. 23:921(H), 'upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.' Therefore, irreparable injury is not a required element for the issuance of a preliminary injunction for the enforcement of the noncompetition, nondisclosure, and nonsolicitation agreements." *Tech. Indus., Inc. v. Banks*, 419 F. Supp. 2d 903, 915 (W.D. La. 2006).  Because the parties have not addressed this statute, the Court declines to do so here.

the harm to the Defendant (a restraint of a relatively short duration) appears slight, while the damage to the Plaintiff (loss of clients and confidential information to a competitor) appears substantial. Moreover, as detailed below, the Court will tailor its order to minimize the harmful effects on the Defendant. *See infra*, ¶ 3(a), (b), and (c)

6. The grant of this temporary restraining order will not disserve the public interest. Defendant has not satisfactorily demonstrated that the "Supervision, Confidentiality, and Non-Solicitation Agreement (PCS)" (Doc. 2-6) is invalid. The employers have a substantial interest in ensuring these contracts are enforced. Clients likewise have an interest in ensuring that their information is not improperly used. While the Defendant is correct that there is a public interest in allowing clients to have the advisor of their choice, this order provides a means to ensure that takes place. *See infra*, ¶ 3(a), (b), and (c).

Accordingly, **IT IS ORDERED** that:

1. A temporary restraining order is issued immediately. JPMorgan shall post security in the amount of $10,000 no later than December 14, 2016.

2. Defendant and all those acting in concert with her, including but not limited to the directors, officers, employees and agents of Morgan Stanley, are temporarily enjoined and restrained, directly or indirectly, from:

> (a) soliciting, attempting to solicit, inducing to leave or attempting to induce to leave any JPMorgan client for whom Defendant had professional contact, for whom she had responsibility, or with respect to whom she was privy to any information by virtue of her employment with JPMorgan (or any of its predecessors in interest) during the last two years; for JPMorgan clients in Louisiana, this restriction applies only to clients in the following parishes: Ascension, Assumption, East Baton Rouge, Iberia, Iberville, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Mary, St. Tammany, Tangipahoa, Terrebonne and West Baton Rouge;

> (b) soliciting any employee of JPMorgan, inducing or attempting to induce any employee of JPMorgan to join Morgan Stanley, or taking any action to assist

          Morgan Stanley in soliciting or hiring any employee of JPMorgan, or inducing or attempting to induce any employee of JPMorgan to leave JPMorgan; and

          (c) using, disclosing or transmitting for any purpose JPMorgan's documents, materials and/or confidential and proprietary information pertaining to JPMorgan, JPMorgan's employees, and/or JPMorgan's clients.

3.      However:

          (a) Defendant is not prohibited from sending written contact information (restricted solely to name, telephone number, and email address) to any JPMorgan customer so long as Defendant did not derive the customer's contact information from JPMorgan's confidential or proprietary information.

          (b) Defendant is not prohibited from placing telephone calls to any JPMorgan customer who initiated telephone, email, written, or other contact with Defendant and requested that Defendant phone the customer.

          (c) Morgan Stanley shall not solicit JPMorgan's customers whose accounts were serviced by the Defendant (if and only if Morgan Stanley learned of such customers from the Defendant), except Morgan Stanley may contact those individual customers who initiate contact with the Defendant seeking further information on the development of a plan as a new customer of Morgan Stanley (if and only if the Defendant had not previously solicited such customers in violation of paragraph 2(a) of this order).

4.      Defendant, and all those acting in concert with her, including but not limited to the directors, officers, employees and agents of Morgan Stanley, are further ordered to return to JPMorgan or its counsel all records, documents and/or information in whatever form (whether original, copied, computerized, electronically stored or handwritten), pertaining to JPMorgan's clients, employees and business, within 24 hours of notice to Defendant or her counsel of the terms of this Order;

5. This temporary restraining order is binding upon Defendant, her agents, servants, employer, any entity with which or for whom she is employed or affiliated, and those in active concert or participation with her who receive actual notice of this Order;

7

6. This Order shall remain in full force and effect for a period of fourteen days pursuant to Fed. R. Civ. P. 65;

7. The parties are directed to proceed with arbitration in accordance with Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes.

8. Counsel for the parties shall inform the Court as to the status of the FINRA arbitration not later than December 19, 2016.

Signed in Baton Rouge, Louisiana, on December 12, 2016.

	**JUDGE JOHN W. deGRAVELLES**
	**UNITED STATES DISTRICT COURT**
	**MIDDLE DISTRICT OF LOUISIANA**